CAMPBELL, Judge.
Appellant was charged with and convicted of kidnapping and armed robbery. He appeals his convictions and his sentences of two consecutive thirty year terms each with credit for time served. Although we have decided to affirm, we note that appellant raises two points that merit discussion. First, did the trial court err in denying appellant’s motion to suppress the line-up and in-court identifications of him since he was placed in the line-up after his first appearance hearing without the presence of counsel; second, did the trial court err in failing to instruct the jury on the minimum penalty for the offense of kidnapping.
A review of the facts will aid in our later discussion of appellant’s first point.
On the evening of November 2, 1981, at approximately 7:15 p.m., Howard N. Jensen stopped at a service station just outside of Ellenton in Manatee County to buy cigarettes. As he left the station, a man approached Jensen and asked him if he would jump-start his car. Jensen agreed and pulled his car over near the other car in the well-lit parking lot of the station. The passenger of the other car, later identified by Jensen as appellant, assisted. After pushing the other car so there would be room to run a jumper cable from Jensen’s car to this second car, the three men jump-started it. This took about twenty minutes during which time the three talked about the nature of the problem with the car and the fact that Jensen’s car had somewhat of the same type problem. They also discussed the fact that the other car was from out of state, and Jensen noticed that the license tag on the other ear was dark or black in color.
After the car was jump-started, the strangers asked Jensen if he knew of an inexpensive motel. He told them there was one just past 1-75 and then told them how to get there. Apparently because they had had trouble with their car, they asked Jensen if he would follow them to the motel, and he agreed. They left the service station parking lot and drove toward U.S. 301 and in the direction of the motel. As they approached downtown Ellenton, the other ear slowed down, pulled off the side of the road, and stopped. Jensen also stopped. All three got out of their ears, and the strangers told Jensen their car would not run again and asked him if he would take them to the motel. Jensen agreed, and the driver of the other car got into the passenger side of the front seat with Jensen, while the passenger of the other car, appellant, got into the back seat behind Jensen, who then drove off in the direction of the motel. Once on U.S. 301, appellant pulled a gun, stuck it to the back of Jensen’s head, and ordered him to stop. The man in the front passenger seat then got out, walked around the car, got into the driver’s seat, and drove off back in the direction they had come. They drove back to their car, and appellant told the driver to see if their car would start. It did, and appellant got into the driver’s seat of Jensen’s car and proceeded to follow the other car. Jensen was now seated in the passenger side of the front seat of his own car.
While appellant drove, they followed the other car down U.S. 301 to the 1-75 intersection. Once there, they headed south over the Manatee River bridge on 1-75. Just as they crossed the bridge, the first car pulled over to the side at the end of the guard rail, and appellant pulled over behind it. Jensen was ordered to take off all his clothes and run down the embankment, which he did, leaving behind his money, wallet, and checkbook with his name and address on it. As he was running into the woods, he heard a shot fired behind him. After hiding in the trees, he observed the two cars drive off in a southerly direction on 1-75. After covering himself with a palm frond and a McDonald’s bag which he found in the woods, he climbed back to the guard rail where he waived at passing traffic to attract attention. After twenty to thirty minutes, a state trooper, Trooper Donald, stopped, and Jensen told the trooper that he had been robbed of his car, his clothes, and his money. He described his car, a 1972 two-door Cutlass, yellowish orange in color, and described the other car as *199 a 1970 or 1971 black two-door Monte Carlo with sun-fadéd paint and a vinyl top. He described the license plate as, he believed, a Tennessee or Texas license, but in any event he was certain that its color was black or dark blue. He described the men in the other car as wearing blue jeans and short-sleeved shirts. He said one wore a blue jean jacket with a sheepskin lining and a cowboy hat, and one was described as having a tatoo on his left arm. The trooper broadcast a “BOLO” on his patrol radio, and Jensen was then taken home.
Shortly after the trooper took Jensen home, Trooper Wilson, also on 1-75, came upon a dark-colored early 1970 model Chevrolet with a vinyl top parked in the southbound emergency lane on 1-75, approximately five to six miles south of the Manatee River bridge where Jensen had been ordered out of his car. Smoke billowed slowly from under the hood of the apparently abandoned vehicle. Wilson called for assistance from a nearby fire station and after raising the hood determined that the vehicle was not on fire but that the smoke came from burning oil on the engine. The vehicle had a Kentucky license plate which was dark, with deep blue lettering, almost black. It was consistent with Jensen’s description. While Trooper Wilson was checking the car, he heard a noise, which sounded like rustling in the bushes, off the west boundary of the interstate. He got back into his patrol car, drove north approximately a mile on the interstate, turned around and came back to within a quarter mile of the abandoned vehicle, where he parked in the median strip with his lights off so he could observe the vehicle. After about fifteen to twenty minutes, he saw two individuals come onto the highway from the area where he had heard the rustling in the bushes. They faced the hood of the vehicle for two or three minutes and then hailed down a passing motorist. At that point, Trooper Wilson drove again to where the vehicle was parked.
Wilson described one of the men as having tatoos on both arms, wearing a dark blue tee shirt and dark pants. He described the other man as wearing a denim jacket with sheep’s fur lining. Wilson identified this man as appellant and testified that appellant approached him as he got out of his patrol car. After observing a waving movement of the man’s arm, Trooper Wilson twice ordered appellant to stop and then pulled his service revolver. He ordered appellant to lean across the hood of the patrol car. As he frisked appellant, he found Jensen’s checkbook in appellant’s rear hip pocket. Approximately thirty or forty-five minutes later, Trooper Wilson also found a revolver, fully loaded except for one spent round, lying on the side of the roadway off the paved gravel section within two or three feet of the spot where appellant had made the waving movement of his arm when Trooper Wilson drove up. That revolver was later identified by Jensen as apparently the one which was held on him when he was ordered to disrobe and run into the woods. Other items bearing a similarity to items taken from Jensen were also found on appellant.
The next day in a line-up conducted at the Sarasota County Sheriff’s Office, Jensen identified appellant as one of the individuals involved in the robbery and kidnapping. He also identified appellant at trial. At the line-up, appellant had already had a first appearance hearing, and counsel had not been appointed. Therefore, the line-up identification of appellant occurred without benefit of counsel. Florida Rule of Criminal Procedure 3.111(a) provides that persons shall be entitled to have counsel appointed when formally charged with an offense, or as soon as feasible after custodial restraint, or upon his first appearance before a committing magistrate, whichever occurs earliest.
In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the United States Supreme Court held that there is grave potential for prejudice in a pretrial line-up and that presence of counsel can often avert prejudice and insure a meaningful confrontation at trial. Though Wade involved a situation where counsel had already been appointed, we think the same rule would apply where counsel had *200 not been appointed but should have been. The Court in Wade was unable to determine from the record whether the in-court identification had an independent origin other than the tainted line-up identification. Therefore, the conviction was vacated pending a hearing in the trial court to determine whether the in-court identification had an independent source, or whether in the alternative the introduction of the evidence was harmless error.
In the companion case of Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the United States Supreme Court addressed a similar issue and vacated a conviction pending such proceedings as the California Supreme Court should determine appropriate to afford the state an opportunity to establish that the in-court identifications had an independent source, or in the alternative that their introduction into evidence was harmless error. The Court in Gilbert went on to state that in those instances where a witness testifies at the trial that he identified the defendant in a line-up later determined to be illegal, a per se exclusionary rule should apply and a new trial should be ordered, unless the California Supreme Court, in that instance, was able to declare a belief that the identification problems were “harmless beyond a reasonable doubt.” 388 U.S. at 274, 87 S.Ct. at 1957, 18 L.Ed.2d at 1187.
In the instant case, Jensen testified that he identified appellant in the line-up, and he also identified appellant in the courtroom. Because the court had denied the motion to suppress the line-up identification, the state made no particular effort to show that the in-court identification was not tainted by the line-up identification. However, the record demonstrates that the evidence supporting the in-court identification was so strong that we can conclude with every degree of certainty that it would have stood on its own absent any line-up identification. We, therefore, hold that the strength of the evidence supporting the in-court identification permits us to conclude, without remand to the trial court, that it was not tainted by the illegal line-up identification, Gilbert v. California, and that any error in the admission of the testimony regarding the line-up identification was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, rehearing denied, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). Jensen’s testimony establishes very clearly that he had ample time and opportunity to observe the individuals involved in the robbery and kidnapping. His descriptions of them and their vehicle matched the individuals and the vehicle Trooper Wilson discovered on the side of 1-75 near where Jensen was ordered from his car. Jensen’s checkbook was discovered in appellant’s hip pocket. Even were it necessary for us to conclude that the admission of both the line-up and the in-court identification was error, we would conclude that the error was harmless in view of the other evidence of guilt contained in the record.
Appellant’s other point concerns the alleged failure of the trial court, after request, to instruct the jury on the minimum penalty for kidnapping. The kidnapping charge in this case would have been a life felony punishable by a term in prison for life or for a term of years not less than thirty. The trial judge, having been asked to do so, told the jury that he would instruct them on the minimum and maximum penalties for the offenses charged. However, his actual instruction in its pertinent part stated, “the maximum penalty for the crime of kidnapping is thirty years to life imprisonment.” The problem arises because though thirty years was the minimum and life imprisonment was the maximum for kidnapping, the judge categorized the maximum penalty as “thirty years to life imprisonment” and did not specify a minimum penalty for that offense. Defense counsel specifically objected to this oversight or unfortunate choice of terms. We have some concern that the manner in which the judge charged the jury on the kidnapping penalty may be a violation of Tascano v. State, 393 So.2d 540 (Fla.1981). However, we believe any possible error has been cured. In his closing argument, de *201 fense counsel emphasized to the jury several times that the judge would instruct the jury that kidnapping carried a minimum of thirty years in prison. We believe, therefore, that since the jury clearly had the information as to the maximum and minimum penalty for kidnapping, the spirit of the Tasca.no rule was clearly met as stated by the court in McCampbell v. State, 421 So.2d 1072 (Fla.1982); Welty v. State, 402 So.2d 1159 (Fla.1981); and Morgan v. State, 405 So.2d 1005 (Fla. 2d DCA 1981).
We, therefore, affirm the trial court in all respects.
GRIMES, A.C.J., and SCHEB, J., concur.